(10 P.3d 37)
No. 83,482

STATE OF KANSAS, *Appellee*, v. ANDREW STAR, *Appellant*.

Opinion filed August 11, 2000.

*Mary Curtis*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Douglas P. Campbell*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., ELLIOTT, J., and PADDOCK, S.J.

PADDOCK, J.: Andrew Star appeals his convictions of sale of cocaine within 1,000 feet of a school and failure to affix a tax stamp.

The State presented eyewitness testimony that Star was the seller. Star presented evidence to the contrary. The jury believed the State's witnesses and found Star guilty of both charges.

Star raises two points on appeal: (1) The State denied him his due process right to present a defense when it interviewed a witness who was under subpoena by the defense; and (2) the State failed to prove beyond a reasonable doubt the elements of the crime of sale of cocaine within 1,000 feet of a school because there was no evidence the building referred to as Hickok School was used for school instruction, attendance, or extracurricular activities.

Star's first point is without merit. There is substance to his second point which requires that we remand for resentencing.

### The subpoenaed witness issue

The State's evidence placed Jacob Woodring in a car with Star during negotiations for the sale of cocaine. Star believed that the police officer's testimony that Woodring was with Star bolstered the officer's identification of Star by implying that Woodring could also identify Star as the seller. It was Star's belief that Woodring would be willing to testify that he had not been in the car with Star on the date stated by the officer.

Star subpoenaed Woodring to testify at the trial. While at the courthouse waiting to testify, Woodring was taken by a police officer to the law enforcement center for questioning. After the interview, which was approximately 10 minutes in duration, Woodring returned to the courthouse. According to defense counsel, Woodring's memory following the police interview "had flip-flopped from what he had earlier told me." Defense counsel did not ask Woodring whether he was threatened to change his statement, and the record is silent as to whether Woodring ever made any comment about being threatened.

Nevertheless, Star filed a motion for dismissal of the charges against him because of the State's tampering with his witness. In denying Star's motion for dismissal, the trial court found: "There is no rule that says a person cannot be interviewed [by the State] simply . . . because they're under subpoena by the defendant." The trial judge referred to Star's claim that Woodring had been threatened to change his testimony as "pure speculation."

The State informed defense counsel that a complete tape was made of the police interview with Woodring. The prosecutor of-

fered to let the jury hear the tape and determine whether Woodring had been coerced or intimidated. The defense did not respond to the State's offer. Consequently, the tape was not played at the trial.

At the hearing on Star's motion for a new trial, the officer who had interviewed Woodring stated that he did not prevent Woodring from returning to the courthouse to answer his subpoena to testify.

A recent Supreme Court opinion places the burden of proof on the defense to establish that State misconduct prevented a defense witness from testifying. In *State v. Finley*, 268 Kan. 557, Syl. ¶ 2, 998 P.2d 95 (2000), the court stated:

"Where a defendant claims that the State, by its conduct, has denied him or her the right to present evidence in defense by interfering with a material defense witness, the question is whether there was substantial government interference with a defense witness' free and unhampered choice to testify. The burden is upon the defendant to establish that the actions of the State or the court exerted such duress on the witness' mind as to preclude him or her from making a free and voluntary choice whether to testify."

Clearly, Star has failed to meet his burden to establish misconduct of the State during its interview of Woodring. Generally, the State is not prohibited from interviewing a witness subpoenaed by the defense. Such interview, to establish a due process violation, must be shown to have constituted substantial government interference with the defense witness' free and unhampered choice to testify.

Cases cited by Star to support his claim of State's witness tampering are of no aid to him because in those cases there was evidence of substantial government interference with a defense witness. See *Webb v. Texas*, 409 U.S. 95, 34 L. Ed. 2d 330 93 S. Ct. 351 (1972) (defense witness intimidated by remarks of trial judge); *Washington v. Texas*, 388 U.S. 14, 18 L. Ed. 2d 1019, 87 S. Ct. 1920 (1967) (defendant's 6th Amendment rights were violated where state statute prohibited a co-participant in the same crime to testify in the defense of the defendant); *United States v. Henricksen*, 564 F.2d 197 (5th Cir. 1977) (defense witness intimidated by terms of plea bargain); *State v. Asher*, 18 Kan. App. 2d 881, 861 P.2d 847 (1993) (defense witness threatened by prosecutor that

plea bargaining with the witness would cease if the witness testified).

Star has failed to show that Woodring's "flip-flop" testimony was the result of substantial State interference with his free and unhampered choice to testify.

*The school property issue*

The evidence that referenced the sale occurred within 1,000 feet of a school was that sale transactions occurred within a park area across from Hickok School. In describing a diagram of the area, a witness explained the diagram showed the school parking lot, Hickok School, and the grounds around Hickok School.

K.S.A. 1999 Supp. 65-4161(d) states in pertinent part that a person is guilty of a drug severity level 2 felony if the drug was

"possessed with intent to sell, deliver or distribute; sold or offered for sale in or on, or within 1,000 feet of any school property upon which is located a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12."

Although there was evidence that Hickok School was in Ulysses, Grant County, no evidence identified the building as a structure used by a unified school district or as an accredited nonpublic school for any of the uses listed in the statute.

The judge instructed the jury: "You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." Another instruction gave the jury the elements of sale of cocaine within 1,000 feet of a school and the elements of the lesser included charge of sale of cocaine. This instruction also provided: "As used in this instruction 'school' means a structure used by a unified school district or an accredited nonpublic school for school instruction, attendance or extracurricular activities of pupils enrolled in kindergarten or any grades 1 through 12."

Star pointed out that no evidence was presented that Hickok School was a structure used in the manner required by the statute. He argued that the jury "can only apply its common sense and judgment and experience to evidence presented. To say that they

can come to court knowing some of the elements of the crime is absolutely a denial of the fundamental fairness and due process."

The State, arguing to the contrary, stated that members of the jury can "bring their common sense and their background of experiences to bear on the facts that are presented to them." According to the State, all the jury members were from Grant County and have "every right to infer, and correctly so, that that's a school system, that it's an accredited school. They see it everyday in operation as a school."

The trial court, in response to the State's argument, stated that the prosecutor could not rely on the jury taking notice somehow that the building referred to as Hickok School was used for "instruction or attendance or extracurricular activities of pupils." However, the trial court ruled:

"I do believe that there was evidence that the jury found, and there better be evidence in the record that they found, that that was a school, and that's the end of it. And if they didn't follow the instructions, you may well be right, Mr. Gale [defense counsel]. But, nevertheless, I think that there is evidence in the record to sustain the jury's verdict that there was a sale within 1,000 feet of a school."

Although we agree with the trial court's comment concerning what the prosecutor could not rely on, we find the ruling ambiguous when the judge stated there was evidence the jury found Hickok was a school within the statutory definition, yet in the same sentence stated: "[T]here better be evidence in the record that they found, that that was a school."

When the sufficiency of the evidence is challenged in a criminal case, "the standard of review on appeal is whether, after review of all the evidence viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Juiliano*, 268 Kan. 89, 96, 991 P.2d 408 (1999).

A conviction can be sustained only upon evidence which proves every element of a crime beyond a reasonable doubt. *State v. Barker*, 18 Kan. App. 2d 292, 295, 851 P.2d 394 (1993). In *State v. Cruz*, 15 Kan. App. 2d 476, 490, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991), the court stated the jury may draw presumptions and inferences from the facts established, but it is reversible error

to allow the jury to speculate on unjustifiable inferences. The *Cruz* court noted: "The due process clause of the Fourteenth Amendment requires proof beyond a reasonable doubt of each element of the crime charged. *In re Winship*, 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970)." 15 Kan. App. 2d at 488. The *Cruz* court found insufficient evidence of possession of cocaine to "give rise to or justify the inference which allows a finding of guilt beyond a reasonable doubt." 15 Kan. App. 2d at 490. Further, it was reversible error to allow the jury to speculate on unjustifiable inferences: "Guilt may never be based on inference alone. Presumptions and inferences may be drawn from facts established, but presumption may not rest upon presumption or inference on inference. *State v. Doyle*, 201 Kan. 469, Syl. ¶ 8, 441 P.2d 846 (1968)." 15 Kan. App. 2d at 490.

In *State v. Josenberger*, 17 Kan. App. 2d 167, 836 P.2d 11, *rev. denied* 251 Kan. 941 (1992), this court dealt with a question of double jeopardy and not with whether a named school was a school within the statutory definition. However, the *Josenberger* court's discussion of school property is instructive. Josenberger was charged with the sale of marijuana within 1,000 feet of school property in violation of K.S.A. 1991 Supp. 65-4127b(e). (K.S.A. 1991 Supp. 65-4127b(e) provided the same definition of school property as the current statute). At the close of the evidence, the defendant moved for a directed verdict, and the trial court found there was no evidence to show L.M. Alcott High School was school property as defined by K.S.A. 1991 Supp. 65-4127b(e). The trial court's finding in *Josenberger* that the State had failed to show a structure called the L.M. Alcott High School was a school within the statutory definition supports the defendant's argument that reference to the Hickok School in the present case, without more, failed to establish a necessary element of the crime. Also instructive in *Josenberger* was the defendant's argument that "the added factor of 'within 1,000 feet of the school' has only to do with enhancement of sentence and is not an element of the offense." *Josenberger*, 17 Kan. App. 2d at 173. The *Josenberger* court rejected this argument, finding:

"Each offense is set forth in different sections of the same statute. In order to be convicted of the class B felony, the jury must necessarily conclude by the evidence beyond a reasonable doubt that the sale took place within 1,000 feet of a school. This is necessarily an element of the class B felony and is a separate crime from the sale of marijuana, a class C felony." 17 Kan. App. 2d at 173.

We find that to sustain a conviction for the crime of sale of cocaine within 1,000 feet of a school, there must be evidence that the structure referred to as a school is one as defined in K.S.A. 1999 Supp. 65-4161(d), that is, "a structure used by a unified school district or an accredited nonpublic school for student instruction or attendance or extracurricular activities of pupils enrolled in kindergarten or any of the grades one through 12." Such evidence is necessary to prove a necessary element of the offense, and where lacking, a jury cannot be allowed to speculate or infer through its own observations that the structure complies with the statutory definition of a school.

The evidence was sufficient to convict Star of the offense of sale of cocaine although insufficient to show the sale occurred within 1,000 feet of a school. When a defendant has been convicted of the greater offense but as a matter of law only, the lesser included offense can stand, the conviction for the greater offense should be reversed and the case remanded for defendant to be resentenced on the conviction of the lesser offense. See *State v. Kingsley*, 252 Kan. 761, 782, 851 P.2d 370 (1993).

We reverse Star's conviction of sale of cocaine within 1,000 feet of a school, remand for sentencing on sale of cocaine, and affirm the tax stamp conviction.

Affirmed in part, reversed in part, and remanded with directions.